**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RAPHAEL PARRISH,                    :
                                    :    Civil Action No. 11-5556 (NLH)
             Plaintiff,             :
                                    :
      v.                            :    **OPINION**
                                    :
ARAMARK FOODS, INC., et al.,        :
                                    :
             Defendants.            :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Raphael Parrish
Salem County Correctional Facility
125 Cemetery Road
Woodstown, NJ 08028

**HILLMAN**, District Judge

      Plaintiff Raphael Parrish, a prisoner confined at Salem
County Correctional Facility in Woodstown, New Jersey, seeks to
bring this action alleging violations of his constitutional
rights.  Plaintiff originally filed this action in the Superior
Court of New Jersey, Law Division, Salem County Civil Part,
docketed as Case No. SLM-L-244-11.  Defendant Salem County
Correctional Facility removed the case on September 23, 2011, and
paid the filing fee.

      At this time, the Court must review the Complaint to
determine whether it should be dismissed as frivolous or
malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.[1]

## I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint, dated June 27, 2011, and are accepted as true for purposes of this review.

> On 4/7/11 at 11:30 a.m. I was eating lunch and as I bit into my noodles I felt something get stuck into my tooth.  I then pulled out a Rusty Paper Clip.  I then notified the Correctional Officer c/o Ayars and gave him the Paper Clip.  He then wrote a report then sent me to Medical.  The Nurse looked into  my mouth and said, being sarcastic, OH, OK, you'll live.  While the whole time my tooth was hurting.  4/18/11 I then seen the Dentist which advised me my tooth had been chipped into pieces.

Complaint, Page 1.

Plaintiff names as Defendants Salem County Correctional Facility and Aramark Foods, Inc.  He asserts the following grounds for relief:  (1) Professional Malpractice, (2) Medical Malpractice, (3) Negligence, and (4) Cruel and Unusual Punishment.  He seeks all appropriate relief.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28

---

[1] In addition, Defendant Salem County Correctional Facility has filed a Motion to Dismiss.

U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic

3

> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(citations omitted).

    The Court of Appeals for the Third Circuit has held that the

Twombly pleading standard applies in the context of a § 1983

civil rights action.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008).

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

    More recently, the Supreme Court has emphasized that, when

assessing the sufficiency of any civil complaint, a court must

distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

6

IV.  ANALYSIS

A.  Constitutional Claims

Plaintiff does not state whether he was a pre-trial detainee or a convicted and sentenced prisoner at the time of the events described.[2]  The result here is the same either way.

1.  Claims Against Salem County Correctional Facility

A jail is not a "person" amenable to suit under 42 U.S.C. § 1983.  See Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) (county jail not an entity amenable to suit under 42 U.S.C. § 1983); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993) (Cook County Jail not a "person" under § 1983); McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890, 893-94 (E. D. Va. 1992) (local jail not a "person" under § 1983); Vance v. County of Santa Clara, 928 F. Supp. 993, 995 (N.D. Cal. 1996) (county department of corrections is an agency of the county and cannot be sued separately from the county under § 1983); Mayes v. Elrod, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979) (county department of corrections not a suable entity separate from the county).  Accordingly, all constitutional claims against Salem County Correctional Facility will be dismissed with prejudice.

_____

[2] The Court notes that the New Jersey Department of Corrections Inmate Locator reflects that Rafael D. Parrish, a/k/a Raphael D. Parrish, out of Salem County, was sentenced on drug related charges on October 5, 2011, suggesting that Plaintiff was a pre-trial detainee on April 7, 2011.

2.   <u>Constitutional Claims Against Aramark Foods, Inc.</u>

Plaintiff also names as a defendant Aramark Foods, Inc., otherwise unidentified, but presumably a contractor providing food or food preparation services to Salem County Correctional Facility.

Private parties may be liable under § 1983 only when they have acted under color of state law.  <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir.), <u>cert. denied</u>, 516 U.S. 858 (1995) (quoting <u>Flagg Bros., Inc. v. Brooks</u>, 436 U.S. 149, 156 (1978)). The "under color of state law" requirement of 42 U.S.C. § 1983 has been treated identically to the "state action" requirement of the Fourteenth Amendment.  <u>See</u> <u>Mark</u>, 51 F.3d at 1141 (citing <u>United States v. Price</u>, 383 U.S. 787, 794 n.7 (1966)); <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 928 (1982); <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 838 (1982)).  State action exists under § 1983 only when it can be said that the government is responsible for the specific conduct of which a plaintiff complains.  <u>Mark</u>, 51 F.3d at 1141-42.  "Put differently, deciding whether there has been state action requires an inquiry into whether 'there is a sufficiently close nexus between the State and the challenged action of [the defendants] so that the action of the latter may fairly be treated as that of the State itself.'"  <u>Id.</u> at 1142 (quoting <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982)).

8

A private entity can be sued under § 1983 only where (1) it "has exercised powers that are traditionally the exclusive prerogative of the State," Mark, 51 F.3d at 1142; (2) the State and the private party act in concert or jointly to deprive a plaintiff of his rights, Adickes v. S.H. Kress & Co., 398 U.S. 144, 170-171 (1970); (3) the State has permitted a private party to substitute his judgment for that of the State, Cruz v. Donnelly, 727 F.2d 79, 81-82 (3d Cir. 1984); or (4) the private party and the State have a symbiotic relationship as joint participants in the unconstitutional activity, Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 620 (1991); Mark, 51 F.3d at 1143. See also DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989) (Fourteenth Amendment's "purpose was to protect the people from the State, not to ensure that the State protected them from each other"); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996) ("Individuals . . . have no right to be free from infliction of [constitutional] harm by private actors"), cert. denied, 519 U.S. 1111 (1997); Jones v. Arbor, Inc., 820 F. Supp. 205, 208 (E.D. Pa. 1993) (plaintiff did not allege that defendant corporation was a state actor or had such a symbiotic relationship with the state so as effectively to be an instrumentality of the state).

In addition, municipal corporations and supervisors are not liable under § 1983 solely on a theory of respondeat superior.

9

See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must

10

demonstrate that, through its deliberate conduct, the

municipality was the moving force behind the plaintiff's injury.

Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing]
> final authority to establish municipal policy with
> respect to the action issues a final proclamation,
> policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212
> (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati,
> 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452
> (1986) (plurality opinion)).  A custom is an act "that
> has not been formally approved by an appropriate
> decisionmaker," but that is "so widespread as to have
> the force of law." [Bd. of County Comm'rs of Bryan
> County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]

> There are three situations where acts of a
> government employee may be deemed to be the result of a
> policy or custom of the governmental entity for whom
> the employee works, thereby rendering the entity liable
> under § 1983.  The first is where "the appropriate
> officer or entity promulgates a generally applicable
> statement of policy and the subsequent act complained
> of is simply an implementation of that policy."  The
> second occurs where "no rule has been announced as
> policy but federal law has been violated by an act of
> the policymaker itself."  Finally, a policy or custom
> may also exist where "the policymaker has failed to act
> affirmatively at all, [though] the need to take some
> action to control the agents of the government 'is so
> obvious, and the inadequacy of existing practice so
> likely to result in the violation of constitutional
> rights, that the policymaker can reasonably be said to
> have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

The same standard applies to claims against a private

corporation that is functioning as a "state actor."  See Weigher

v. Prison Health Services, 402 Fed.Appx. 668, 669-70, 2010 WL

4739701 (3d Cir. Nov. 23, 2010).

Here, Plaintiff has alleged no facts that would justify treating Aramark Foods, Inc., as a "state actor," nor has Plaintiff alleged any facts that would suggest that the presence of a foreign object in his food was the result of a policy, practice, or custom.  Thus, there would be no basis to hold Aramark Foods, Inc., liable for any constitutional violation.

  3.   Merits of the Constitutional Claims

In addition, Plaintiff has failed to allege facts stating a constitutional claim.  To the extent Plaintiff was a convicted and sentenced prisoner at the time of the acts complained of, he is protected by the Eighth Amendment proscription against cruel and unusual punishment; pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535, n.16, 545 (1979); City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983); Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 (3d Cir. 2003); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir. 2000); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  With respect to medical care and prison conditions, however, pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners.  Bell v. Wolfish, 441 U.S. at 545; Hubbard,

399 F.3d at 165-66; Natale, 318 F.3d at 581-82; Kost v. Kozakiewicz, 1 F.3d 176, 187-88 (3d Cir. 1993).

      a.   The Eighth Amendment

    The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993). It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Id. at 31.

    To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment

claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The
subjective component requires that the state actor have acted
with "deliberate indifference," a state of mind equivalent to a
reckless disregard of a known risk of harm.  See Farmer v.
Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a
conditions-of-confinement claim if he can show that the
conditions alleged, either alone or in combination, deprive him
of "the minimal civilized measure of life's necessities," such as
adequate food, clothing, shelter, sanitation, medical care, and
personal safety.  Rhodes, 452 U.S. at 347-48; Young v. Quinlan,
960 F.2d 351, 364 (3d Cir. 1992).  However, while the Eighth
Amendment directs that convicted prisoners not be subjected to
cruel and unusual punishment, "the Constitution does not mandate
comfortable prisons."  Rhodes, 452 U.S. at 349.  To the extent
that certain conditions are only "restrictive" or "harsh," they
are merely part of the penalty that criminal offenders pay for
their offenses against society.  Id. at 347.  An inmate may
fulfill the subjective element of such a claim by demonstrating
that prison officials knew of such substandard conditions and
"acted or failed to act with deliberate indifference to a
substantial risk of harm to inmate health or safety."  Ingalls v.
Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

To the extent Plaintiff seeks to assert an Eighth Amendment claim based upon the presence of a paper clip in his lunch, he has failed to allege any facts suggesting either an actionable extreme deprivation or deliberate indifference on the part of any correctional officials or food service contractor.  The Complaint does not state a claim for cruel and unusual punishment based upon the isolated and random event of the presence of a foreign object in Plaintiff's lunch.

In addition, the Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so

15

obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made."  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation

omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ...  Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment."  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out."  Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'"  Id. at 347 (citation omitted).

17

Here, Plaintiff alleges that he was immediately evaluated by a nurse and that he saw a dentist eleven days after his tooth was chipped.  Assuming that the chipped tooth was a serious medical need, Plaintiff has alleged no facts suggesting deliberate indifference or any deficiency in his care.  Although the nurse may not have been overtly sympathetic, there is nothing in the facts alleged to suggest that she did not arrange for appropriate care.  To the contrary, Plaintiff saw a dentist eleven days after the injury to his tooth.  The Complaint fails to state a claim for cruel and unusual punishment in the context of the medical care his chipped tooth required or received.

    b.   The Fourteenth Amendment

Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.[3]  See Hubbard v. Taylor, 399 F.3d 150  (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of whether such a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

_____

    [3] A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or state law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...

Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not,

19

without more, constitute unconstitutional punishment, even if
they are discomforting and are restrictions that the detainee
would not have experienced had he been released while awaiting
trial."  441 U.S. at 540.

As noted above, with respect to medical care and prison
conditions, however, pretrial detainees retain <u>at</u> <u>least</u> those
constitutional rights enjoyed by convicted prisoners.  <u>Bell v.</u>
<u>Wolfish</u>, 441 U.S. at 545; <u>Hubbard</u>, 399 F.3d at 165-66; <u>Natale</u>,
318 F.3d at 581-82; <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 187-88 (3d
Cir. 1993).

Here, Plaintiff has failed to allege any facts suggesting
any intent to punish in connection with either the foreign object
in his food or the delivery of medical services.  Nor do the
facts alleged reflect that the incidents complained of arose out
of any arbitrary or purposeless policies or practices.  The
Complaint fails to state a claim for deprivation of Plaintiff's
due process rights.

B.   <u>State Law Claims</u>

The Complaint can be construed as asserting, in addition to
federal constitutional claims, state law claims for negligence.
Pursuant to 28 U.S.C. § 1367(c)(3), where a district court has
dismissed all claims over which it has original jurisdiction, it
may decline to exercise supplemental jurisdiction over a related
state law claim.  The Court of Appeals for the Third Circuit has

20

held that, where all federal claims are dismissed before trial, "the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted).  No such extraordinary circumstances appear to be present.

In addition, 28 U.S.C. § 1441©) provides that, "Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or in its discretion, may remand all matters in which State law predominates."

As Plaintiff's Complaint fails to name any proper state actors as defendants, as well as fails to state a claim for a constitutional deprivation, this Court will exercise its discretion to remand all remaining state-law claims.

V.   <u>CONCLUSION</u>

For the reasons set forth above, all constitutional claims will be dismissed with prejudice, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim.  It does not appear that Plaintiff could supplement his pleading with facts sufficient to overcome the deficiencies noted

21

herein with respect to his constitutional claims.  The remaining state law claims will be remanded to state court.

The outcome of this Court's statutorily-mandated review procedure has rendered moot the Motion [2] to Dismiss.

An appropriate order follows.


At Camden, New Jersey                    __s/Noel L. Hillman_____
                                         Noel L. Hillman
                                         United States District Judge

Dated: April 2, 2012